# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SHAWN A. BURNS,**

                        **Plaintiff,**

**-vs-**                                                    **Case No.  6:05-cv-986-Orl-JGG**

**JO ANNE BARNHART, Commisioner of
the Social Security Administration,**

                        **Defendant.**
_____/

# MEMORANDUM OF DECISION

Plaintiff Shawn Alberta Burns ["Burns"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying Burns's application for a disability insurance benefits. *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **REMANDED** pursuant to 42 U.S.C. § 405(g)(Sentence Four).

## I.    PROCEDURAL HISTORY

On June 18, 2003, Burns filed a claim for a period of disability and disability insurance benefits, claiming disability as of May 14, 2002. R. 57.  On August 3, 2004, the Honorable Randall W. Moon, Administrative Law Judge ["ALJ"], held a hearing on Burns's claim in Syracuse, New York. R. 213 - 268.  Attorney Monica Robinson Heath represented Burns at the hearing. R. 213.  The ALJ heard testimony from Burns and Vocational Expert ("VE") John Panza.

On November 24, 2004, the ALJ issued a decision that Burns was not disabled and not entitled to benefits. R. 25-37.  Following a review of the medical and other record evidence, the ALJ found that Burns could not perform her past relevant work as a state police officer. R. 34, 37 Finding 7.  The

ALJ found that Burns nevertheless retained the residual functional capacity ["RFC"] to perform a significant range of the physical exertional requirements of light work.  R. 37, Finding 11.  Applying the Medical-Vocational Guidelines, the ALJ concluded that Burns was not disabled.[1]  R. 37, Finding 12.

On May 4, 2005, the Appeals Council denied review.  R. 4-6.  On July 1, 2005, Burns timely appealed the Appeals Council's decision to the United States District Court.  Docket No. 1.  On December 2, 2005, Burns filed in this Court a memorandum of law in support of her appeal.  Docket No. 20.  On January 31, 2006, the Commissioner filed a memorandum in support of her decision that Burns was not disabled.  Docket No. 22.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Burns assigns numerous errors to the Commissioner.  First, Burns claims that the Commissioner erred in rejecting the opinion of treating physician Dr. Ricciardi.  Second, Burns claims that the Commissioner erred by failing to weigh and consider the consultative opinions of three doctors who examined Burns as part of her workers' compensation case.  Third, Burns claims that the Commissioner erred in failing to weigh and consider the consultative opinion of Dr. Shayevitz.  Fourth, Burns contends the administrative record is incomplete and is missing the report of Dr. Benton.  Fifth, Burns argues the residual functional capacity ("RFC") assessed by the ALJ is

---

[1]The Social Security ALJs face a herculean task.  The Commissioner now expects ALJs to hear and decide 50 to 55 decisions per month according to a former Chief ALJ in a July 2005 presentation at a Federal Judicial Center workshop on disability appeals.  With only the help of non-attorney decision-writers and staff attorneys, the ALJs must rapidly process a monumental backlog of thousands of complex, aging cases.  The effects are felt in the district court. According to the AOUSC, the Middle District of Florida has the third highest volume of disability appeals in the nation.  Each magistrate judge in the Orlando Division, for example, resolves approximately fifty-three appeals every year  —  an average of about one per week.

unsupported by substantial evidence.  Lastly, Burns contends the ALJ failed to follow Social Security Ruling 96-7 when assessing Burns's credibility.

The Commissioner argues that substantial evidence supports her decision to deny disability. First, the Commissioner argues that the ALJ appropriately rejected Dr. Ricciardi's opinion because it was not supported by clinical or objective findings.  Docket No. 22 at 8.  Second, the Commissioner argues that the ALJ appropriately rejected the opinions of the workers' compensation physicians as their opinions were conclusory.  Docket No. 22 at 11.  Third, the Commissioner argues that the ALJ appropriately evaluated Dr. Shayevitz's findings as they failed to quantify Burns's limitations.  Docket No.22 at 12.  Fourth, the Commissioner argues that the ALJ fully and fairly developed the record and the remand is inappropriate.  Docket No. 22 at 13.  Fifth, the Commissioner argues that the ALJ's RFC finding was supported by substantial evidence.  Docket No. 22 at 15.  Finally, the Commissioner argues that the ALJ appropriately determined Burns's credibility.

## III.  THE STANDARD OF REVIEW

### A.  AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

## B.     REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate

award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to

consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1

(11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).   After a

sentence-four remand, the district court enters a final and appealable judgment immediately, and then

loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the
> Commissioner of Social Security, but only upon a showing that there is new evidence
> which is material and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new,

non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is

a reasonable possibility that it would change the administrative result; and 3.) there is good cause for

failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92; *Cannon

v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir.

1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health and

Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner

if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.  With a

sentence-six remand, the parties must return to the district court after remand to file modified findings

of fact.  *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does

not enter a final judgment until after the completion of remand proceedings.[2]  *Id.*

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.*

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

### A.   DEVELOPING THE RECORD

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C. § 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all

---

Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits.  *Bergen v. Comm'r of Soc. Sec.*,  454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted).

## B.    THE FIVE STEP EVALUATION

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and

well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"]. This assessment measures whether a claimant can perform past relevant work despite his or her impairment. 20 C.F.C. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.C. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant. *See* SSR 82-61. If so, the claimant is not disabled. If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy. SSR 82-61. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.C. § 404.1567.

The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v.*

*Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c).  If a claimant becomes disabled after losing insured status, the claim for disability benefits must be denied despite the claimant's disability.  *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

### C.    OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"].  *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).  Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a

vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### D.     TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also, 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a

physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527(e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

### E.    PAIN

Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1529. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### F.    CREDIBILITY

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

### G.    MEDICAL TESTS AND EXAMINATIONS

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

## V.    APPLICATION AND ANALYSIS

### A.    THE FACTS

Burns was born in 1957, and was 47 years old at the time of the ALJ's decision.   R. 35;  57.  Burns received her Bachelor of Arts degree in 1978 and graduated from the New York State Police Academy in 1982.  R. 77.  Burns has past relevant work as a state police trooper and police investigator.  R 72.

Burns claims a disabling onset date of May 14, 2002, when she fell off the side of a chair at work and injured the left side of her neck and back.  R. 159.  On May 15, 2002, Burns saw her primary care physician, Richard F. Seidner, M.D. who ordered testing.  *Id.*  An X-ray of the cervical spine dated May 15, 2002, showed straightening of the normal cervical lordosis and disc space narrowing at C3-4, C5-6 and C6-7 level with endplate degenerative changes.  R. 174.  An X-ray of the thoracic

spine dated the same showed mild degenerative disc disease.  *Id*.  There were no fractures and no paraspinal masses.  *Id*.  A lumbar spine X-ray was negative.  TR 175.

On July 22, 2002, Dr. Saad G. Sobhy, M.D. evaluated Burns for low back pain.  R. 110.  On physical examination, Burns's lumbar range of motion produced moderate tenderness at mid ranges. R. 111.  Straight leg raising produced low back pain at 70 degrees on the right.  *Id*.  Dr. Sobhy's impression was mechanical low back pain syndrome and to rule out lumbosacral radiculopathy.  *Id*. Dr. Sobhy opined that Burns was "temporarily totally disabled" and ordered electrodiagnostic testing to determine neurological involvement.  R. 112.  An EMG/Nerve conduction study performed on September 4, 2002, showed no electrodiagnostic evidence of neuropathy, radiculopathy, plexopathy or myopathy.  R. 108-109.

On August 8, 2002, orthopedic surgeon Dr. Joseph E. Ortiz, M.D. conducted an Independent Medical Examination.  R. 121-124.  Dr. Ortiz concurred that Burns's previous x-ray showed evidence of mild degenerative changes to the cervical, thoracic and lumbosacral spine.  R. 124.  On physical examination, Dr. Ortiz observed the active range of motion of the dorsolumbar spine was found to be normal in extension and right and left lateral bending, but flexion was carried out to only 40 degrees and Burns complained of pain across the lumbosacral junction and right lower region.  R. 123.  The Plaintiff displayed hypoactive patellar and Achilles reflexes bilaterally.  T. 124.  Dr. Ortiz's diagnosis was lumbosacral strain.  R. 121.  Based on New York State Workers' Compensation Board Medical Guidelines, Dr. Ortiz opined that Burns had a mild to moderate degree of temporary partial disability. R. 122.

On October 15, 2002, orthopedist Nicholas M. Ricciardi, M.D. saw Burns for neck and low back pain. R. 129-31. Burns informed Dr. Ricciardi that she sustained her injury while conducting a search of a house pursuant to a warrant. R. 131. Plaintiff displayed "significantly restricted" forward flexion of her lower back. R. 130. She was mildly restricted in her ability to extension bend and rotate. R. 130. With respect to her cervical spine, the Plaintiff displayed symmetrically depressed reflexes in her upper extremities. R. 130. Dr. Ricciardi diagnosed neck and low back pain and prescribed Extra Strength Tylenol and aquatic physical therapy. R. 129. Dr. Ricciardi stated, "[G]iven the circumstances she should be considered at least temporarily totally disabled. Total disability would be for [a] job for which she is qualified by virtue of education, training and experience." R. 129.

On November 13, 2002, Dr. Ortiz examined Burns a second time. R. 117-20. His diagnosis continued to be lumbosacral strain, but he added "rule out facet arthropathy." R. 117. Subjectively, Burns reported low back pain that was aggravated by prolonged sitting, standing, bending or twisting motions. R. 119. Burns further stated that she cannot lift or push due to the symptoms of low back pain and she gets occasional radiation to the right buttock. *Id.* On physical examination, Dr. Ortiz noted marked restrictions in regards to flexion producing acute pain across the lower back. R. 120. Further, extension and lateral bending to the right and left showed evidence of moderate restrictions with Burns complaining of pain in the midline lumbosacral junction. *Id.* Abduction strength tests also produced pain in the lumbar region. *Id.* The Patrick's test produced pulling sensation in the lower back. *Id.*

On December 17, 2002, Dr. Ricciardi saw Burns for a follow up. Burns reported that she continued to experience significant lower back discomfort, but she denied any leg pain or neck pain. R. 129. Burns further reported that she occasionally took Tylenol to sleep. R. 129. On physical examination, Dr. Ricciadi noted that Burns' forward flexion was markedly limited. *Id*. Burns was able to get on and off the exam table by herself, she walked with a normal gait, she had a normal heel and toe stance, and free motion of both hips. *Id*. Dr. Ricciardi directed Burns to complete her physical therapy and to follow up in three weeks. R. 128.

Burns followed up with Dr. Ricciardi on January 7, 2003. R. 128. Burns reported daily constant low back discomfort with worsening at night. *Id*. She also reported that moving in certain ways results in pain radiation down into her buttocks. *Id*. Physical examination by Dr. Ricciardi revealed "very limited flexion" with maximal flexion of 10 to 15 degrees at best. *Id*. Her seated straight leg raising was 90 degrees. *Id*. Dr. Ricciardi prescribed additional physical therapy. *Id*. Dr. Ricciardi noted that Burns could not fulfill the essential requirements of her current job as police investigator. *Id*.

Burns saw Dr. Ricciardi again on February 18, 2003. R. 127. Burns reported continuing low back pain for which she took Tylenol for relief and Percoset at times. *Id*. Physical examination revealed "really negligible" forward flexion. *Id*. Burns's reflexes were decreased at +1 at the knees and 0 to +1 at the ankles. *Id*. Dr. Ricciardi ordered an MRI noting that Burns has thus far failed all conservative care. *Id*.

Burns had a lumbar MRI on March 28, 2003. R. 134-35. The MRI revealed lumbar spondylosis at multiple levels. There is a small broad based posterior disc protrusion midline and to

the right at L3-4.  There was 5 mm of retrolisthesis at L5 on S1 noted and there is a posterior herniated disc with no neural encroachment.  There are degenerative changes with narrowing of the foramen L5-S1 on the right side with abutment of the L5 nerve root.   There is moderate narrowing of the neural foramen L4-5 on the left.  There also was a borderline low termination of the clonus medularus.

On April 1, 2003, Dr. Ricciardi again saw Burns.  R. 126.  On physical examination, Burns's forward flexion was "essentially nil."  *Id*.  Dr. Ricciardi maintained a diagnosis of low back pain with a new diagnosis of lumbar spondylosis.  *Id*.  Dr. Ricciardi stated Burns remained unable to fulfill the essential requirements of her job, and was temporarily totally disabled.  *Id*.  Burns declined any invasive procedures, including nerve blocks, and wanted to continue with conservative measures.  *Id*.

On May 30, 2003, Burns reported to Dr. Ricciardi that her right lower extremity gave way while descending stairs, causing her to fall and bounce down five stairs.  R. 125.  Examination showed a loss of normal gait and a marked limitation of forward flexion.  The Plaintiff's deep tendon reflexes were symmetrically depressed at +1.  Dr. Ricciardi stated that Burns remained temporarily totally disabled.  *Id*.

On July 25, 2003, Burns reported to Dr. Ricciardi that her lower back discomfort was getting worse.  R. 206.  Burns stated that standing and sitting especially bother her, and that she experiences pain in the lower right extremity when braking her car.  She additionally reported that climbing stairs provokes right leg pain.  She has some numbness of the right buttock and occasional numbness in the left buttock.  She is taking three Percoset a day.  R. 206.  Physical examination revealed rotation of the right hip provokes some discomfort in the posterior aspect of the limb.  *Id*.

-19-

On August 4, 2003, orthopedic surgeon W. David Ferraraccio, M.D. conducted an Independent Medical Examination.  R. 195-199.  Dr. Ferraraccio noted that Burns's physical findings were essentially unchanged from when she was examined by Dr. Ortiz on March 5, 2003.  R. 196.  On examination, Dr. Ferraraccio noted persistent muscle spasm, forward flexion of only 10 degrees, absent knee reflexes and trace ankle reflexes.  R. 198.  Burns reported pain on a continual basis that is aggravated by bending.  R. 197.  Burns also reported that she could lift up to 10 pounds.  R. 197. Dr. Ferraraccio noted that it has been one year since Burns has worked and that her prognosis is guarded.  R. 196.  The only additional treatment recommended was epidural injections.  *Id*.

On August 26, 2003, Dr. Berton Shayevitz, M.D performed a consultative orthopedic examination.  R. 179-82.  On examination, Burns displayed  lateral neck flexion of 0-40 degrees bilaterally limited by stiffness.  R. 181.  Forward flexion of the thoracic and lumbar spine was 0-90 degrees limited by low back pain on going down and on getting up.  R. 181-82.  Straight leg raising in the sitting position is 0-90 degrees bilaterally and in the recumbent position, left is 0-90 degrees without discomfort and the right is 0-75 degrees limited by right low back pain.  R. 182.  Burns had a normal gait and could walk on heels and toes without difficulty.  She also could perform a full squat and arise without difficulty, needed no help getting on and off the examination table and could rise from a chair without difficulty.  R. 181.  Her strength was 5/5.  R. 182.  Dr. Shayevitz diagnosed low back pain with some history and physical findings compatible with possible radiculopathy.  R. 182. Dr. Shayevitz opined that Burns was "moderately limited in sitting, somewhat above moderately in standing, walking, carrying, bending forward, and twisting, and she has difficulty getting up from a recumbent position."  *Id*.

-20-

On September 8, 2003, L. Maynard[3] completed a Physical Residual Functional Capacity Assessment.  R. 98-103.  Maynard's primary diagnosis for Burns was back disorder.  R. 98. Maynard's opinion appears to be based solely on a medical record review.  R. 99.  Maynard opined that a light RFC was appropriate and that Burns could occasionally lift/carry up to 10 pounds, frequently lift/carry 10 pounds, stand/walk 6 hours in an 8 hour workday, and sit 6 hours in an 8 hour workday.  *Id*.  Further, postural limitations were occasional climbing, balancing, stooping, kneeling, crouching, and crawling. R. 100.  Maynard did not believe her conclusions were significantly different from the treating source's conclusions and, therefore, did not explain why the treating source's conclusions were not supported by the evidence in the file.  R. 102.

On January 14, 2004, Dr. Ferraraccio assessed trace knee and ankle reflexes and lumbar flexion of only 10-15 degrees. R. 192.  Straight leg raising was unremarkable.  *Id*.  Burns reported that she does not experience pain when walking, but that she experiences some discomfort when she stops. R. 192.  She does not have radicular pain below the knee, but does experience some intermittent sensory changes in the right buttock. R. 192.  Dr. Ferraraccio noted that Burns' condition remained generally unchanged and that her prognosis for further improvement was poor.  R. 191.

Dr. Ferraraccios examination on May 26, 2004, again showed absent knee and ankle reflexes and severely decreased flexion of the back.  R. 186.  Burns also displayed spinal tenderness and mild to moderate paraspinal spasm.  *Id*.

On August 4, 2004, Dr. Ricciardi completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical) form. R. 207-210.  Dr. Ricciardi's opinion was based on Burns's

---

[3] The record does not reflect Maynard's qualifications, such as whether Maynard is an M.D.  Maynard's signature did not include the appellation of M.D.  See R.103.

patient history, MRI findings and physical examination.  R. 208.  Burns's physical examination on that date revealed no capacity for forward flexion, extension, bend or rotation.  R. 211.  Dr. Ricciardi opined that Burns can occasionally lift and/or carry less than ten pounds, and frequently lift and/or carry less than ten pounds.   R. 207.   She can stand and/or walk at least two hours in an eight-hour workday, and sit less than six hours in an eight-hour workday with requirements that she must periodically alternate sitting and standing.  R. 207-8.

Burns further was limited in the use of her lower extremities to push and/or pull, although Dr. Ricciardi did not specify to what degree she was limited.  R. 208.  Dr. Ricciardi further opined that Burns could never stoop, crawl, crouch, kneel, balance or climb.  *Id*.  Burns was environmentally restricted against working with hazards or in humidity or wetness.  R. 210.  In his note dated August 4, 2004, Dr. Ricciardi makes it clear that this form was reviewed with Burns prior to its submission, and that she concurred with the statements regarding her physical condition.  R. 211.  Dr. Ricciardi opines that Burns's condition is permanent and that she cannot perform her job as a state trooper.  R. 211.

Burns has described her activities since her injury as including several trips both by plane and car between Florida and New York.  R. 226.  She does pool exercises every day for 30 minutes, and walks about 2 miles in 30 minutes, 3 times a week.  R. 237-39.  She also does 5-8 minutes of floor exercises daily.  R. 239-40.  Burns performs light housework, including rinsing dishes and loading the dishwasher, laundry, and vacuuming.  R. 241.  She also grocery shops for approximately 20 minutes and pushes the cart.  R. 242.  Most of her time, she spends sitting in a recliner watching television or reading.  R. 238.  Recently, she and her husband went on a 7-day Caribbean Cruise.  R. 244-45.  She

uses a computer from her recliner to email messages to her family in New York and for paying bills. R. 246, 248.

B.    THE ANALYSIS

1.    <u>The ALJ Did Not Err in Rejecting Treating Physician Ricciardi's Opinion</u>

Burns's treating orthopedist, Dr. Ricciardi, opined that Burns was limited from performing the full range of sedentary work.  Specifically, Dr. Ricciardi opined that Burns could lift/carry less than 10 pounds, stand/walk for at least two hours during the workday, sit for less than six hours during the workday, and that she required a sit/stand option.  The ALJ rejected these opinions "to the extent the reported limitations conflict with my findings detailed below regarding the claimant's ability to perform a range of light work."  R. 34.  Burns argues that the ALJ's findings consisted of nothing but his own opinion formed in reliance on one State Agency non-reviewing opinion. Docket 20 at 9.  The State Agency opinion was that of L. Maynard.  R. 34 (reference to Disability Examiner Exhibit 5E); 98-103.

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician.  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  Further, the ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.

-23-

If the ALJ had relied solely on Maynard's opinion as the basis for rejecting Dr. Ricciardi's opinion, the decision would be problematic.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984) (a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion).  The ALJ, however, articulated additional reasons for not giving controlling weight to Dr. Ricciardi's opinions.  Specifically, the ALJ refused to give controlling weight to Dr. Ricciardi's opinions on the grounds that they were: (1) inconsistent with the lack of neurological deficit and the fact that the only significant limitation reported on the numerous examinations was a reduced range of motion; (2) primarily based on Burns's subjective complaints; and (3) the fact that Burns assisted him in completing the statement and concurred with the reported limitations.  R. 34.

An ALJ may appropriately reject the opinion of a physician that is based on the claimant's subjective complaints.  *See, Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (reasoning that ALJ properly rejected the opinion of a treating physician "based primarily on Crawford's subjective complaints of pain").  An opinion that is based on Burns's subjective complaints is not a medical opinion and is not entitled to any deference.  *See, Young v. Sec'y of Health & Human Serv.*, 925 F.2d 146, 151 (6th Cir. 1990) ("However, this report is based on claimant's subjective complaints").

Additionally, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  In this case, the ALJ specifically noted that repeated examinations showed no evidence of neurologic deficit, and that diagnostic studies revealed no radiculopathy.  R. 33, 34.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)

(reasoning that prior inconsistent treatment notes and Plaintiff's daily activities supported ALJ's decision to reject functional capacities evaluation by treating physician).

In contrast to Dr. Ricciardi's opinion that Burns was limited in terms of walking and standing, examinations routinely demonstrated that Burns had a normal gait with full strength and range of motion in the lower extremities. R. 128-31, 201-06. Burns could walk on heels and toes and engaged in a regular exercise program. R. 114-24, 237. Although Dr. Ricciardi opined that Burns could not kneel or crouch, Dr. Shayevitz documented that Burns could perform a full squat and arise without difficulty. R. 181. Burns's physicians have not observed any difficulty with sitting, and Burns even admitted that she spends most of the day in a recliner reading and watching television. R. 180-81, 238. She is able to take extended trips from New York to Florida via plane and automobile. R. 201, 226. The ALJ noted that the only positive examination finding was limited forward flexion with even *de minimis* findings such as tenderness being absent on most occasions. R. 34, 128-31, 201-06. Good cause, therefore, existed for the ALJ to deny controlling weight to Dr. Ricciardi's opinion.

2. **The ALJ Erred In Failing to Weigh the Consultative Opinions of Workers' Compensation Examiners and Burns's Treating Physicians**

The ALJ acknowledged the opinions of the workers' compensation examiners who concluded that Burns was temporarily or permanently disabled for purposes of her workers' compensation claim. The ALJ noted that these opinions related to Burns's ability to perform the demands of her past work as a state police officer, and concluded that these opinions were irrelevant to the issue of whether the claimant is under a "disability" for purposes of entitlement to Disability Insurance Benefits. R. 33-34. Burns interprets the ALJ's decision as a failure to consider the medical findings of the examiners as well as their ultimate opinion as to disability. Burns also points out that some of the records the ALJ

-25-

identified as being from workers' compensation examiners were actually records from Burns's treating doctors.

While Burns is correct that the ALJ referenced some of the treating doctors' records as records from workers' compensation examiners, the underlying argument that the ALJ failed to consider the medical evidence is without merit.  A careful reading of the entire decision reflects that the ALJ considered the medical findings of both the workers' compensation examiners and Burns's treating physicians.  See R. 31-33.

The ALJ must do more than just consider all of the medical evidence, but he also must state with particularity the weight given different medical opinions and the reasons therefore.  Failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  In this case, the ALJ did not state what weight he accorded to the medical opinions of the various physicians, other than stating he did not give controlling weight to Dr. Ricciardi's opinion.

The ALJ's failure to make the necessary findings, makes it impossible for a reviewing court to determine whether the ALJ's determination of Burns's RFC and his ultimate decision is supported by substantial evidence.  *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).  This matter, therefore, must be remanded pursuant to sentence four for the ALJ to make the required findings regarding the weight to be accorded to the different medical opinions.  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983).

### 3.      Completeness of the Administrative Record

Burns argues that the administrative record is incomplete in that it fails to include a report dated May 28, 2004, from Louis J. Benton, M.D.  Burns forwards two arguments for remand: (1) the evidence was submitted to the ALJ as shown by Burns's pre-hearing response to the ALJ (R. 104) and her counsel's reference to the report in her brief before the AC (R. 17); and/or (2) Benton's report is new and was not previously part of the administrative record.  Docket 20 at 14.

The Commissioner argues that it is Burns's burden to prove disability, and that her counsel at the administrative hearing reviewed the exhibits and affirmed that they were correct.  R. 217.  When asked whether there were any additional exhibits Burns wished to present, counsel only identified an additional record from Dr. Ricciardi.  R. 217-19.  The Commissioner further contends that the record was fully and fairly developed, and that Burns has not established any prejudice or unfairness due to the alleged omission of Dr. Benton's report from the record.   The Commissioner further argues that remand under Sentence 6 of 42 U.S.C. § 405(g) is inappropriate because Burns failed to object so the Court may determine whether the required good cause and materiality exist.  Plaintiff has not satisfied the requirements for a sentence six remand.  Since the Court has decided to remand the case pursuant to sentence four on other grounds, however, Burns may submit Dr. Benton's report to the ALJ on remand.

### 4.      The ALJ Did Not Err in Assessing Burns's Credibility

The ALJ found Burns's testimony regarding the nature and extent of her impairments was not fully credible.  R. 31.  In support of this finding, the ALJ stated that Burns's reported activities were inconsistent with the degree of limitations alleged, she has received only conservative treatment, and

her prescribed medication (Percocet) is used for mild to moderate pain.  R. 31.  The ALJ also found that the clinical findings reported by the treating and examining sources failed to support the degree of pain and functional limitations alleged by Burns.  R. 31.  Burns argues the ALJ failed to apply the Eleventh Circuit's three-part pain standard or SSR 96-7p.

When the medical evidence indicates the existence of such an impairment, the ALJ must evaluate the credibility of the claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony.  In making this evaluation, the ALJ considers objective medical evidence and information from the claimant and the treating or examining physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, any precipitating and aggravating factors, medication taken, and any other measures taken to alleviate the claimant's pain.  20 C.F.R. § 404.1529(c)(2-3).

The ALJ analyzed the totality of the medical evidence and concluded that it did not substantiate Burns's allegation that she was incapable of performing any work.  R. 21.  In support of his reasoning, the ALJ observed that the primary examination finding was limited forward flexion.  R. 34.  Other findings had generally been normal with even *de minimis* findings such as tenderness being absent on many occasions.  R. 34.  Burns's gait was normal; she had 5/5 strength and could perform a full squat without difficulty.  R. 181.  Nerve conduction studies were normal with no evidence of radiculopathy.  R. 108-09.  The mild nature of objective findings do not support Burns's allegation of disabling pain.

Additionally, the ALJ found that Burns's daily activities were inconsistent with her alleged degree of impairment.  R. 31.  In determining the credibility of a claimant's statements about her

-28-

impairment, the ALJ must consider, in addition to the objective medical evidence, evidence of a claimant's daily activities.  See 20 C.F.R. § 404.1529 (c)(3)(i); SSR 96-7p.

Furthermore, the ALJ may consider evidence of daily activities in determining the credibility of a claimant's allegation of disabling pain.  *See, Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005) (citing to activities such as driving, childcare, housework, and self-care).  In *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984), the Eleventh Circuit reasoned that the ALJ's consideration of factors such as the use of pain killers and a claimant's daily activities was proper in making a finding about pain.  In the present case, Burns indicated that she performs light household chores, takes car and plane trips between New York and Florida, drives, has taken a cruise, performs aquatic exercise, and has a walking program.  R. 31, 226, 237, 243-45.  Although Burns indicated that she was limited in performing many of these activities, the ALJ reasonably concluded the nature and variety of these activities was inconsistent with the degree of dysfunction alleged.  R. 31.

The ALJ also observed that the conservative nature of treatment weighed against Burns's allegation that she experienced debilitating pain and functional limitations.  An individual's statements may be less credible "if the level or frequency of treatment is inconsistent with the level of complaints."  SSR 96-7p.  The ALJ noted that Burns had declined surgery and other more aggressive treatment for her complaints.  R. 31.  Burns testified that she used only Percocet for relief of her symptoms, which the ALJ noted was prescribed for only mild to moderate pain.  R. 31.  Notably, Dr. Ricciardi believed that Percocet was not justified for Burns's complaints, and advised Burns to use non-prescription Tylenol.  R. 129.  *See Harwell*, 735 F.2d at 1293 (reasoning that the lack of use of potent pain medication supported ALJ's credibility finding); *Wyatt v. Sec'y of Health & Human*

-29-

*Serv.*, 974 F.2d 680, 686 (6th Cir. 1992) (claimant properly found not disabled where chest pain was relieved by medication and claimant engaged in household chores).   The ALJ has articulated sufficiently specific reasons supporting his finding that Burns is not fully credible.   The ALJ did not err in his credibility determination.

## VI.     **<u>CONCLUSION</u>**

         For the reasons stated above, the decision of the Commissioner is **REMANDED pursuant to sentence four** for further proceedings not inconsistent with this decision.   The Clerk should enter a separate judgment in favor of Plaintiff and against Defendant and close the case.   The 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) for seeking attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) is hereby extended until 30 days after the Commissioner's final determination of Plaintiff's past-due benefits, if any.   *See Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

         **DONE** and **ORDERED** in Orlando, Florida on September 18, 2006.

                                                              JAMES G. GLAZEBROOK
                                                              UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Douglas Wilson, Branch Chief
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL              33602

The Honorable Randall W. Moon
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
6 Suburban Ct.
Morgantown, WV 26505